**MATTHEW PAPPAS** (SBN: 171860)
**CHARNEL JAMES** (SBN: 289326)
LAW OFFICES OF CHARNEL JAMES
117 C. Street
Marysville, CA  95901
Phone: (530) 923-4678
E-Mail:  cjames@charneljameslaw.com

Attorneys for Plaintiffs

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA  95901
(530) 923-4678

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES MICHAEL BENNO, JESSICA ELAINE BENNO, JACOB DANIEL BENNO, LOGAN WAYNE BENNO, MARCIA JONES, DENNIS PERON, BRIAN MONTERROZO, RICHARD YOUNG, CHARLES B. McINTOSH, JESSICA CONCHA SOLANO, NICHOLAS NEAL BOLTON, WALTER CARNEY, JERILYN CARNEY and JOSH HANCOCK

Plaintiffs,

v.

SHASTA COUNTY, CALIFORNIA; SHASTA COUNTY SHERIFF'S DEPARTMENT; THOMAS BOSENKO, in his capacity as Sheriff of Shasta County; DALE FLETCHER; TOM BARNER; SHASTA COUNTY CODE ENFORCEMENT; SHASTA COUNTY BOARD OF SUPERVISORS; LESTER BAUGH; and DOES 1 to 10,

Defendants.

No.**:**

**COMPLAINT FOR VIOLATION OF 42 U.S.C. § 1983, THE CALIFORNIA CONSTITUTION, FOR INJUNCTIVE & DECLARATORY RELIEF AND DAMAGES**

Come now the above-named Plaintiffs to complain of violations of constitutional and statutory rights by the above-named Defendants as follows:

COMPLAINT - 1

## JURISDICTION AND VENUE

1. Plaintiffs seek relief for violations of the United States Constitution and damages under 42 U.S.C. §§ 1983 and 42 U.S.C. 2000cc, *et seq.*, providing this court with subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. The state law claims for relief are within the supplemental jurisdiction of the Court under to 28 U.S.C. § 1367.

2. Venue is proper in this Judicial District because this is where the injury occurred and where the Defendants are located.

## PARTIES

3. Plaintiff JAMES MICHAEL BENNO is an individual who resides in Shasta County, California.

4. Plaintiff JESSICA ELAINE BENNO is an individual who resides in Shasta County, California.

5. Plaintiff JACOB DANIEL BENNO is an individual who resides in Shasta County, California.

6. Plaintiff LOGAN WAYNE BENNO is an individual who resides in Shasta County, California.

7. Plaintiff MARCIA JONES is an individual who resides in Shasta County, California.

8. Plaintiff DENNIS PERON is an individual who resides in San Francisco, County, California.

9. Plaintiff BRIAN MONTERROZO is an individual who resides in Dupont, Colorado.

10. Plaintiff RICHARD YOUNG is an individual who resides in Shasta County, California.

11. Plaintiff CHARLES B. McINTOSH is an individual who resides in Shasta County, California.

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

12. Plaintiffs JESSICA CONCHA SOLANO and NICHOLAS NEAL BOLTON are individuals who reside in Shasta County, California.

13. Plaintiffs WALTER and JERLYN CARNEY are individuals who reside in Shasta County, California.  Plaintiff WALTER CARNEY served in the United States military from 1985 to 1988 and was honorably discharged in 1988.

14. Plaintiff JOSH HANCOCK is an individual who resides in Shasta County.

15. Defendant SHASTA COUNTY, CALIFORNIA ("COUNTY") is a municipal entity, organized and existing under the Constitution of the state of California.

16. Defendant SHASTA COUNTY SHERIFF'S DEPARTMENT ("SHERIFF'S DEPARTMENT") is a governmental entity operating as part of COUNTY and is charged with the enforcement of Shasta County laws pertaining to medical marijuana cultivation.

17. Defendant THOMAS BOSENKO is an individual and is sued in his capacity as Sheriff of Shasta County.

18. Defendant DALE FLETCHER is an individual and is sued individually and in his capacity as an officer of the Shasta County Code Enforcement department.

19. Defendant TOM BARNER is an individual and is sued individually and in his capacity as an officer of the Shasta County Sheriff's Department.

20. Defendant SHASTA COUNTY CODE ENFORCEMENT ("CODE ENFORCEMENT") is a governmental entity operating as part of COUNTY and is charged with the enforcement of Shasta County laws pertaining to medical marijuana cultivation.

21. Defendant SHASTA COUNTY BOARD OF SUPERVISORS ("BOARD") is a governmental entity operating as part of the COUNTY and is charged with adjudicating administrative claims under the Shasta County Code ("SCC").

22. The true names or capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as "DOE" are unknown to Plaintiffs, who therefore sues those Defendants by fictitious names.  Plaintiffs will request leave to

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

amend this Complaint to show the true names or capacities of these Defendants once they have been ascertained.

23.    Plaintiffs are informed and believe and based upon such information and belief allege that the actions of the Defendants named herein as "DOE" contributed to and were done in concert with the other Defendants whether those Defendants are named or are also "DOE" Defendants not yet specifically identified.

24.    Plaintiffs are informed and believe and based upon such information and belief allege that all of the actions alleged in this Complaint were taken pursuant to customs, policies, and practiced have been, are presently, and will be acting under the color and authority of the laws of the United States and the state of California.

## JURISDICTIONAL PREREQUISITES

25.    No government claim filing prerequisite or other administrative remedy need be exhausted to establish jurisdiction in this matter. A state may not impose substantive limitations on a Civil Rights Act action, thus a federal civil rights claim need not be presented to a public entity before filing suit. *Florio v. City of Ontario*, 130 Cal.App.4th 1462, 1468 (2005); *California Correctional Peace Officers Assn v. Virga* (2010) 181 Cal.App.4th 30, 38 (2010).  Plaintiffs' state law claims either: (A) do not seek monetary damages; (B) or a party need not comply with the Government Claims Act when bringing a state action solely for injunctive or declaratory relief.  State claims seeking only injunctive or declaratory relief are exempt from Ca. Government Claim Act notice requirements.  Cal. Gov't Code § 905.1    *See*, *Lozada v. City and County of San Francisco*, 145 Cal.App.4th 1139, 1163-1164 (2006).

## COMMON FACTUAL ALLEGATIONS

26.    In 1997, Plaintiff JAMES BENNO began cultivating medical cannabis in Shasta County, California pursuant to California Health & Safety Code § 11362.5.

27.    In 2004, Plaintiff JAMES BENNO began collectively cultivating medical cannabis in Shasta County, California for himself and a group of patients pursuant to California Health & Safety Code § 11362.7, *et seq*.

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

28.     In 2011, Plaintiff JAMES BENNO moved his location for collective cultivation of medical cannabis to a location on Hope Kay Lane in Shasta County, California.

29.     In 2004, Plaintiffs JESSICA SOLANO and NICHOLAS BOLTON began collectively cultivating medical cannabis in Shasta County, California pursuant to California Health & Safety Code § 11362.7, *et seq.*

30.     In 2009, Plaintiffs WALTER and JERILYN CARNEY began collectively cultivating medical cannabis in Shasta County, California pursuant to California Health & Safety Code § 11362.7, *et seq.*

31.     In November, 2014, Defendant COUNTY enacted "Measure 'A'" ("ORDINANCE") banning outdoor cultivation of marijuana.

32.     On May 20, 2014, Defendants SHERIFF'S DEPARTMENT and CODE ENFORCEMENT raided the property of Plaintiff JAMES BENNO destroying approximately 99 medical cannabis plants, removed dirt and damaged and destroyed personal property.  Defendant SHERIFF'S DEPARTMENT arrested Plaintiffs JAMES BENNO, JACOB BENNO and LOGAN BENNO. Plaintiffs JAMES BENNO and LOGAN BENNO were held in jail for approximately sixty (60) days following the arrest. Plaintiff JACOB BENNO was held in jail for approximately forty-five (45) days.

33.     In or around September, 2013, SHERIFF'S DEPARTMENT and CODE ENFORCEMENT ordered the removal of approximately 68 medical marijuana plants from the property of Plaintiffs JESSICA SOLANO and NICHOLAS BOLTON.

34.     In or around September, 2013, SHERIFF'S DEPARTMENT and CODE ENFORCEMENT raided the property of WALTER and JERILYN CARNEY destroying approximately 96 medical cannabis plants and destroyed personal property.  Defendant SHERIFF'S DEPARTMENT arrested Plaintiffs WALTER and JERYLYN CARNEY. Plaintiffs WALTER and JERYLYN CARNEY were held in jail for three (3) days.

35.     In or around September, 2015, Plaintiffs WALTER and JESSICA CARNEY were assessed a $4,518.00 "Nuisance Abatement" tax charge based on a lien

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

recorded on August 24, 2015 and recorded against APN 057-480-010-000 in Shasta County, California.

36.    On or around May 1, 2016, Sheriff's deputies entered onto the land of Plaintiff JOSH HANCOCK without a warrant or any circumstances justifying warrantless entry.

37.    Each of the Plaintiffs had established a vested right to conduct the uses of their properties under state law.  The action of COUNTY terminated that right without compensation or adequate amortization period and thus violated the Constitutional rights of the Plaintiffs.

**STATUTORY AND DECISIONAL LAW ALLEGATIONS**

38.    Although the Fifth Amendment's Due Process Clause states only that "no person shall be deprived of life, liberty, or property without due process of law it also provides substantive protections for certain unenumerated fundamental rights. "The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

39.    Modern substantive due process precedent "forbids the government to infringe upon certain 'fundamental' liberty interests unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993).

40.    In *Glucksberg*, the Supreme Court set forth the two elements of the substantive due process analysis.  First, the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed."   Second, substantive due process requires a "careful description" of the asserted fundamental liberty interest at issue. *Glucksberg*, *supra*, 521 U.S. at 720-21, 117 S.Ct. 2258.

41.    Given that "times can blind us to certain truths and later generations can see that laws once thought necessary and proper in fact serve only to oppress," through

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

legislative and social "emerging awareness," a fundamental right may be established . *Lawrence v. Texas*, 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); *Raich v. Gonzales*, 500 F.3d 850, 864-66 (2007).

42.    In areas related to personal decisions regarding medical care, the Supreme Court has, through substantive due process, recognized a fundamental right for the use of contraceptives. *Eisenstadt v. Baird*, 405 U.S. 438, (1972).  It has also recognized the right to refuse unwanted medical treatment. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990).  The fundamental interest in medical care and treatment decision-making was expressed in Justice O'Connor's concurring opinion in the *Glucksberg* case, "a patient who is suffering from a terminal illness and who is experiencing great pain [should face] no legal barriers to obtaining medication, from qualified physicians, to alleviate that suffering, even to the point of causing unconsciousness and hastening death." *Glucksberg*, 521 U.S. at 736-37 (O'Connor, J., *concurring*.)

43.    In November, 1996, California voters approved the *Compassionate Use Act* ("CUA").  Ca. Prop. 215 [1996]; Ca. Health and Safety Code § 11362.5.  The CUA in-part provides that the state should implement a safe and affordable distribution system that provides for all seriously-ill Californians in need of medical marijuana. Ca. Health and Safety Code § 11362.5(B)(1)(c).  In 2003, the California Legislature approved the *Medical Marijuana Program Act* ("MMPA").  Stats. 2003, Ch. 875; enacted 2003, effective 1/1/2004; Ca. Health and Safety Code § 11362.7, *et seq.* The enacting language in the MMPA refers to the distribution system included by the voters in §11362.5(B)(1)(c) of the CUA. Part of the MMPA, Ca. Health and Safety Code §11362.775, implements that system.

44.    Between March 1, 2014 and December 14, 2014, the United States House of Representatives and United States Senate voted to enact H.R. 83, an appropriations bill.  Prior to its enactment, H.R. 83 was amended to include Section 538 (Sec. 538) which prohibited the Department of Justice from using funds in a manner inapposite to

the implementation of state medical marijuana laws in 32 states and the District of Columbia. Thereafter, on December 16, 2014, the President signed H.R. 83, which was codified as Public Law 113-265 and provides in Sec. 538:

> "None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Washington, and Wisconsin, to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana."

45.     In 2015, Congress voted to reauthorize Sec. 538 for fiscal 2016.

46.     In January, 2013, the National Cancer Institute, a part of the federal *National Institutes of Health*, published an article on its Physician Data Query (PDQ™) system reporting that, in laboratory tests, cannabis reduces the size of various cancerous tumors.

47.     In 2010, through its *Home Rule Act* constitutional authority over the federal District of Columbia, Congress approved the District's *Legalization of Marijuana for Medical Treatment Act* as well as the June, 2010 related amendments.

48.     Between 2009-2013, the United States Department of Justice published policy and guidance documents providing it would not expend resources to prosecute people in full compliance with state medical marijuana laws for violations of the federal *Controlled Substances Act*, 21 U.S.C. § 801, *et seq.*

49.     In the last five (5) years, research into the effectiveness of cannabis as a treatment for a variety of conditions, including *Dravet's Syndrome*, a severe form of childhood epilepsy, has shown cannabis is as effective or more effective than prescription drugs or other treatment regimens.

50.     In 2003, the U.S. Department of Health and Human Services, on behalf of the United States, was granted a patent by the U.S. Patent office titled, "The Antioxidant

and Neuroprotective Benefits of Cannabinoids." The patent summary reports cannabinoids are effective is treating Alzheimer's and Parkinson's disease, AIDS dementia and damages caused by stroke.

51. There are thirty-five (35) states that have enacted some form of law providing for the medicinal use of cannabis.

52. As to both federal and California due process rights, "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

53. Procedural Due Process as guaranteed by both the Federal and California constitution follow similar tests. However, it should be noted that in California an additional factor is analyzed. More specifically, identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, (additional California factor) and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

54. In California, "freedom from arbitrary adjudicative procedures is a substantive element of one's liberty … This [California] approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision making and in being treated with respect and dignity." *People v. Ramirez, supra*, 25 C3d at 268, 158 CR at 320

55. In California, the denial of a hearing to protest a discretionary agency decision depriving a person of a "statutorily conferred benefit" is treated as a deprivation of liberty.

56.    In addition, under the California Constitution, the denial of an application for a status or benefit triggers due process protection.

57.    Under Equal Protection provided by the federal Constitution, denying a person a benefit due to poverty in conjunction with exercising a fundamental right has been deemed an equal protection clause breach.

58.    The Supreme Court first addressed the relationship between poverty, fundamental rights and equal Protection in *Griffin v. lllinois* in 1956. 351 U.S. 12 (1956). *Griffin* involved indigent persons in Illinois who had been convicted of armed robbery, but who could not pursue an appeal of their convictions because they could not afford to pay for the mandatory trial transcript. Id.  The Supreme Court held that it violated Equal Protection to deny an appeal of a criminal conviction to an indigent person who could not afford a transcript, stating "In criminal trials, a State can no more discriminate on account of poverty than on account of religion, race, or color. Id. at 17.

59.    Similarly, in *Boddie v. Connecticut*, the Supreme Court in 1971 held that filing fees in divorce cases, as they were applied to low income persons who could not afford to pay them, violated the Due Process Clause of the Fourteenth Amendment. 401 U.S. 371, 372, 383 (1971).  In his concurring opinion, Justice Douglas asserted that the poor are a suspect class and the filing fees, as applied to them, violated Equal Protection. See *Id.* at 385-86 (Douglas, J., *concurring*).

60.    California Constitution Art. I, Section 7(a), Art IV, Section 11, 21 and Civil Code Section 52.1 provide that no citizen may be denied equal protection of the law, that all laws should have a uniform operation, and that no citizens can be granted privileges and immunities not granted on the same terms to all citizens.

61.    Financial disparity is outright protected under the California Constitution.

62.    The Fourth Amendment of the U.S. Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

63.     This applies with equal force in the case of administrative searches. However, for administrative cases, there is no ready test for determining reasonableness, other than by balancing the need to search against the invasion which the search entails. *People v. Hyde*, 12 Cal. 3d 158, 115 Cal. Rptr. 358, 524 P.2d 830 (1974)

64.     At the outset, searches or seizures "without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).  "A warrantless entry to search" for "contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." *Id.*

65.     The Fourth Amendment guarantees that no warrant will issue to search/seize property unless a judicial officer first determines from reviewing the four corners of the affidavit that there exists a substantial probability that contraband, or evidence of a crime, will be located at a particular place.

66.     The affidavit in support of a search warrant under state law must contain facts demonstrating a substantial probability that contraband or evidence of a crime under state law will be located in a particular place. An affidavit based on mere suspicion or drawing conclusions without supporting facts is insufficient.

67.     "In determining whether an affidavit establishes probable cause for the issuance of a search warrant, the court limits its review to the data contained within the four corners of the affidavit."  *Ewing v. City of Stockton*, 588 F.3d 1218, 1225 n.8 (Cir 2009).  Consequently, the requirement that a warrant not issue but upon probable cause, supported by an affidavit, would be reduced to a nullity if a police officer was able to deliberately omit relevant facts to demonstrate probable cause.

68.     "The Fourth Amendment is violated when a facially valid search warrant contains deliberate or reckless omissions of facts that tend to mislead." *Garcia v. County of Merced*, 639 F.3d 1206, 1212 (9th Cir 2011). "Just as the Fourth Amendment prohibits warrantless searches generally, so too does it prohibit a search conducted pursuant to an

LAW OFFICES OF **CHARNEL JAMES**
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

ill-begotten or otherwise invalid warrant." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir 2011). "Even when only a portion of a search warrant is invalid, the subject of the search suffers a constitutional violation." *Millender v. County of Los Angeles*, 620 F.3d 1016, 1024 (9th Cir. 2010) (en banc).

69.    A "judicial deception" claim exists if "the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause" and "the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir 2011).

70.    "The Fourth Amendment is violated when a facially valid search warrant contains deliberate or reckless omissions of facts that tend to mislead." *Garcia v. County of Merced*, 639 F.3d 1206, 1212 (9th Cir 2011). Plaintiffs "had a constitutional right to not be searched and arrested as a result of judicial deception." *Chism v. Washington*, 661 F.3d 380, 393 (9th Cir 2011).

71.    Whether the "judicial deception" was "by material false statements or material omissions is of no consequence. . . . by reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *Liston v. Cty of Riverside*, 120 F.3d 965, 973 (9th Cir 1997). "Governmental employees are not entitled to qualified immunity on judicial deception claims." *Chism v. Washington*, 661 F.3d 380, 393 (9th Cir 2011).

## FIRST CLAIM FOR RELIEF

**(Fourth Amendment, 42 U.S.C. § 1983, Warrantless Search and Seizure -- Against Defendants COUNTY and SHERIFF'S DEPARTMENT)**

72.    Plaintiffs re-allege and incorporate the allegations included in paragraphs 1-70 of this Complaint.

73.    COUNTY has attempted and has actually conducted unlawful searches and seizures of Plaintiffs' property and person, all the while attempting to preclude Plaintiffs

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

the right to adequate, effective, and meaningful access to the courts before taking such actions.

74.    Plaintiff is informed and believed and based upon such information and belief alleges that if WARRANT was obtained to conduct the aforementioned raids of Plaintiffs' property, such WARRANT provided in its overview claims that Plaintiffs are engaged in illegal felony activities.  The warrant failed to include in its affidavit that Plaintiffs operate in conformance with state law, that they had been operating in conformance with state law for years before being raided, that Measure A provided no amortization period, that they had been cultivating medical cannabis in compliance with state law and that the warrant was solely for alleged violation of a county ordinance. Plaintiffs are further informed and believe that the WARRANT's affidavit stated probable cause was based on suspected felony narcotics activity or that officers conducted themselves during execution of the inspection WARRANT in a manner that was akin to that of a felony narcotics warrant and failed to provide any information about the legal operating condition and prior use by Plaintiffs.

75.    WARRANT was incomplete, inconsistent, and was recklessly or intentionally written in a deceptive manner thus vitiating the probable cause alleged by the WARRANT affiant.  Accordingly, the search and seizure conducted by COUNTY and SHERIFF'S DEPARTMENT was done without a warrant thereby violating rights of the Plaintiffs protected by the Fourth Amendment.

76.    Plaintiffs are informed and believe and based upon such information and belief allege that the obtaining and execution of WARRANT was done outside and in contravention of state law provisions for inspection warrants or that no warrant was obtained, returned or served by COUNTY or SHERIFF'S DEPARTMENT.

77.    COUNTY's actions in obtaining and executing WARRANT violated the civil rights of Plaintiffs secured to them via the 4th Amendment to the U.S. Constitution, and are a source of injury, loss, and harm to the Plaintiffs.   Plaintiffs are therefore

entitled to a judgment for such violations as set forth below and for damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**(Fifth Amendment, 42 U.S.C. § 1983, Improper Taking --
Against Defendants COUNTY and SHERIFF'S DEPARTMENT)**

78.     Plaintiffs re-allege and incorporate the allegations included in paragraphs 1-77 of this Complaint.

79.     Plaintiffs were the rightful owners of various properties seized by Defendants.

80.     Medical cannabis and dirt seized and/or destroyed by COUNTY were part of the bona fide operations and practices of Plaintiffs conducted pursuant to state law and were not contraband under state or federal law.

81.     The seizure and destruction of cannabis plants as well as seizure of other property taken by COUNTY constituted takings without just compensation by the Defendants in violation of the Fifth and Fourteenth Amendments to the Constitution and are a source of injury, loss and harm to the Plaintiffs.  As such, Plaintiffs are entitled to judgment for such violations in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

**(Fourth Amendment, 42 U.S.C. § 1983, Excessive Force --
Against Defendants COUNTY and SHERIFF'S DEPARTMENT)**

82.     Plaintiffs re-allege and incorporate the allegations included in paragraphs 1-71 of this Complaint.

83.     On the date of each raid conducted as alleged above, the true basis for the action taken was violation of Measure A.  Measure A is a municipal ordinance.  Measure A does not address violent conduct.  It does not address conduct that harms others but is rather a zoning and land use measure enacted by COUNTY to restrict certain uses of land.

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

84.     During the raids, the Plaintiffs were physically attacked by officers, had weapons pointed at them and were subjected to officers dressed in military-style uniforms some of whom had automatic machine gun type weapons.

85.     During the raids, Plaintiffs were not armed, did not pose any danger to officers and responded to requests made by deputies.  None of the Plaintiffs attempted to escape or evade officers.

86.     The actions of officers led to physical and mental injuries suffered by each of the Plaintiffs including injuries to limbs and other body parts as well as mental injuries including Post Traumatic Stress Disorder, anxiety and other mental disorders.

87.     By pointing weapons, including automatic machine gun-style weapons at Plaintiffs, physically attacking and injuring them, officers used unlawful excessive force.

88.     As a result of the excessive force used by officers, the Plaintiffs, and each of them, suffered physical and mental damages in an amount to be proven at time of trial.

### FOURTH CLAIM FOR RELIEF

**(Inverse Condemnation, California Constitution, 42 U.S.C. § 1983  --
Vested Property Rights, Against All Defendants)**

89.     Plaintiffs re-allege and incorporate the allegations included in paragraphs 1-88 of this Complaint.

90.     Article 1, section 19, clause (a) of the California Constitution permits private property to be "taken or damaged for a public use … only when just compensation … has been paid to, or into court for, the owner."

91.     Plaintiffs each had valid real property interests in the aforementioned properties which were subject to the complained of actions taken by the Defendants.

92.     Plaintiffs had used their properties which were each zoned for uses that allowed for their state law compliant activities for a period of years prior to the passage of Measure A.  Plaintiffs had each made substantial investment in their property.  None were required to have any COUNTY permit or other license during the period they used their respective properties in conformance with state and local law.  Each Plaintiff had established a vested right to the use of their property for medical cannabis cultivation.

93.     Upon passage of Measure A, Plaintiffs were not provided with any amortization period or compensation and their rights were immediately taken from them. While the Plaintiffs do not dispute the COUNTY's inherent ability to provide for zoning and land use, implementation of a law that took away their respective vested rights resulted in a violation of their state and federal Constitutional rights.

94.     Defendants by way of the actions of COUNTY and the laws COUNTY as complained of herein, have substantially interfered with and prevented Plaintiffs from their right to possess and use the real property described above, resulting in a taking in violation of the California and federal Constitutions.

95.     The Defendants' actions have violated the civil rights of Plaintiffs secured to them via the California Constitution, and are the cause of economic loss and other damages to the Plaintiffs.  As such, Plaintiffs are entitled to a judgment for such violations in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (Fourteenth Amendment, 42 U.S.C. § 1983, Substantive Due Process -- Against All Defendants)

96.     Plaintiffs re-allege and incorporate the allegations included in paragraphs 1-95 of this Complaint.

97.     Both substantive and procedural due process rights are guaranteed by the Fourteenth Amendment to the United States Constitution, which applies directly to the states.

98.     Substantive and procedural due process rights of citizens are also protected through provisions of the California Constitution.

99.     More than thirty-four (34) states and the District of Columbia have enacted medical marijuana laws.  A majority of Americans are now covered by state medical marijuana laws.

100.   In January, 2013, the federal *National Cancer Institute* at the *National Institutues of Health* reported that cannabis can reduce the size of breast cancer tumors and various other cancerous tumors.

101.   Since 2001, numerous reports have provided the cannabis is effective in treating the symptoms of Alzheimer's disease, Parkinson's disease, AIDS dimentia, cancer, glaucoma, severe childhood epilepsy, Multiple Sclerosis and various other disabilities and serious illnesses.

102.   Congress has plenary authority over the federal District of Columbia.  (Art. 1, sec. 8, cl. 17, U.S. Constitution.)  In December, 2009, the President signed the *Omnibus Appropriations Act of 2010* in which Congress allowed the District of Columbia to implement its *Legalization of Marijuana for Medical Treatment* law.  District of Columbia laws must be passed to Congress for review prior to enactment.  The *Legalization of Marijuana for Medical Treatment* law was twice sent to Congress and both times approved by it.  Medical marijuana dispensaries and cultivation facilities are now operating in the federal District of Columbia.

103.   In 2014, Congress enacted and the President signed the appropriations law that included Sec.538 prohibiting expenditure of funds by the federal Justice Department that would interfere with or impede the implementation of state medical marijuana laws.

104.   Awareness of the safety as well as benefits of cannabis have emerged so as to make the right of Plaintiffs and their medical cannabis members to access it to alleviate, treat and heal excruciating pain a right that is fundamental thus requiring any law restricting such right be narrowly tailored to address a compelling government interest.  *Lawrence v. Texas,* 539 U.S. 558 (2003); *Raich v. Gonzales*, 500 F.3d 850, 864-66  (2007).

105.   Given the right to access marijuana for health and medical purposes to alleviate severe and debilitating conditions is fundamental, COUNTY's land use and zoning laws are not "narrowly tailored" laws that address "compelling government interests."  Accordingly, the aforementioned laws complained of herein violate the

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

Fourteenth Amendment to the United States Constitution and are invalid and unenforceable.  Moreover, the same state laws violate due process provisions of the California Constitution and are invalid and unenforceable.  As such, the remedies provisions of Ca. Civil Code § 52, *et seq.* form a basis for the Plaintiffs to recover damages from the Defendants in this case.

106.    The aforementioned violation of state and federal civil rights are the direct and legal cause of damages suffered by Plaintiffs in an amount to be proven at time of trial.  The aforementioned continuing and threatened violation of state and federal civil rights constitute irreparable harm for purposes of injunctive relief as set forth below.

## BASIS FOR INJUNCTIVE RELIEF

Fed. Rule Civ. P. 65 & 65(b)(1)(A)

107.    The facts providing a basis for a temporary restraining order and preliminary injunction (Fed. Rule Civ. Proc. 65(b)(1)(A)) are those set forth in paragraph 1 through paragraph 106 of this complaint and are more specifically set forth above.

108.    "[A]n alleged constitutional infringement will often alone constitute irreparable harm." *Monterey Mech. Co. v. Wilson,* 125 F.3d 702, 715 (9th Cir. 1997). Indeed, if an individual or entity faces threat of prosecution under an invalid law, the individual or entity suffers irreparable harm. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381 (1992) (a federal court may properly enjoin "state officers 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act."); *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 366-67 (1989) (suggesting that irreparable injury is an inherent result of the prosecution of an invalid law); *Chamber of Commerce v. Edmonson*, 594 F.3d 742, 771 (10th Cir. 2010) (concluding that plaintiff is likely to suffer irreparable injury if enforcement of an invalid state law that is not enjoined); See also *Villas at Parkside Partners v. City of Farmers Branch,* 577 F. Supp. 2d 858, 878 (N.D. Tex. 2008) (concluding that there is a likelihood of irreparable injury if

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

enforcement of an invalid city ordinance is not enjoined).

109.   The City will suffer little, if any hardship, if it is enjoined from enforcing its invalid zoning and land use requirements against Plaintiffs. There is no evidence Plaintiffs have caused any public health, safety, or welfare issue.

123.   There are numerous constitutional violations set forth by Plaintiffs in this Complaint.  The likelihood of Plaintiffs' success on the merits is substantial.  As applied to Plaintiffs, the state laws complained of herein are constitutionally infirm.  Moreover, the discriminatory actions of COUNTY and SHERIFF'S DEPARTMENT were discriminatory, invalid and illegal.  Accordingly, the balance of hardships that must be weighed by the Court for purposes of injunctive relief weighs heavily in favor of Plaintiffs.

## **PRAYER FOR RELIEF**

Plaintiff prays for relief as follows:

A.   For those claims seeking relief under Federal law:  general, special, and compensatory damages according to proof, for interest on damages as authorized by law, and in addition thereto;

B.   For all claims for relief:  preliminary and permanent injunctions prohibiting COUNTY and its agencies from continuing to discriminate against and prevent Plaintiffs from engaging in their use of their properties subject to a minimum two and a half-year amortization period commencing the date such order issues;

C.   For all claims for relief:  preliminary and permanent injunctions prohibiting all the Defendants from enforcing Measure A unless and until Plaintiffs are provided with compensation for the taking of their property rights in the form of a minimum of a two and a half-year amortization period commencing the date such order issues;

D.   For costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable provision of state or federal law; and

//

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678

E.      For such other relief the Court may deem just and proper.

DATED:  4-30-2016

MATTHEW PAPPAS
Attorney for Plaintiffs

LAW OFFICES OF CHARNEL JAMES
117 C. STREET • MARYSVILLE, CA 95901
(530) 923-4678