UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES MICHAEL BENNO, JACOB DANIEL BENNO, LOGAN WAYNE BENNO, MARCIA JONES, and RICHARD YOUNG,

Plaintiffs,

v.

SHASTA COUNTY, CALIFORNIA; THOMAS BOSENKO; DALE FLETCHER; TOM BARNER; LESTER BAUGH; and DOES 1 to 10,

Defendants,

No. 2:16-cv-01110-TLN-DMC

**ORDER**

This matter is before the Court on Defendant Shasta County's (the "County") Motion to Dismiss.[1] (ECF No. 32.) Plaintiffs James Benno ("James Benno" or "Benno"), Jacob Benno, Logan Benno, Marcia Jones, and Richard Young (collectively, "Plaintiffs") opposed the motion. (ECF No. 34.) The County filed a reply. (ECF No. 35.) For the reasons discussed herein, the Court GRANTS the County's Motion to Dismiss. (ECF No. 32.)

1 Plaintiffs additionally bring this action against Defendants Thomas Bosenko, Dale Fletcher, Tom Barner, and Lester Baugh. (*See* ECF No. 29-1 at 1, 3.) However, these individual Defendants are not represented by the same counsel as the County or represented in the instant motion to dismiss. The Court additionally notes these Defendants were never served process (despite the initiation of this lawsuit on May 20, 2016) and have never appeared in this action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action is proceeding on Plaintiffs' First Amended Complaint ("FAC"), which asserts the County violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments when it enacted various land use ordinances regulating marijuana cultivation and when it conducted raids on Plaintiffs' properties in Shasta County pursuant to "longstanding County customs." (*See generally* ECF No. 29-1.)

### A. Pre-Ordinance Allegations

James Benno "has been a vocal medical marijuana advocate in Shasta County" from 1997 to the present. (*Id.* at 7.) Benno alleges he began cultivating medical marijuana on his real property in Shasta County, California in 1997, and then began "collectively cultivating . . . [it] for himself and a group of patients" in 2004. (*Id.* at 5.) Former Plaintiffs Jessica Solano, Nicholas Bolton, and Walter and Jerilyn Carney also began cultivating medical marijuana on property in Shasta County in 2004 and 2009, respectively.[2] (*Id.*) Plaintiffs allege no facts whatsoever to describe the manner or conditions in which they cultivated the marijuana, but simply claim it was done "pursuant to" the Compassionate Use Act of 1996 (the "CUA"), Cal. Health & Safety Code § 11362.5, and the Medical Marijuana Program (the "MMP"), Cal. Health & Safety Code §§ 11362.7–11362.85. (*See id.*)

### B. 2011 Ordinance

On December 13, 2011, the County enacted an ordinance permitting indoor and outdoor cultivation of marijuana, subject to certain restrictions ("2011 Ordinance").[3] (ECF No. 9 at 4–

---

[2] When this action was initiated, Jessica Solano, Nicholas Bolton, Jerilyn Carney and Walter Carney (additional purported property owners who cultivated medical marijuana in Shasta County); Josh Hancock, Charles McIntosh, and Jessica Benno (residents of Shasta County); Dennis Peron (a San Francisco resident); and Brian Monterrozo (a resident of Dupont, Colorado) were also named Plaintiffs in this action. (*See* ECF No. 1 at 2–3, 5.) On January 14, 2021, however, these Plaintiffs filed a "Notice of Partial Dismissal" (ECF No. 30), in which they dismissed their claims as asserted against all Defendants and were dismissed from this action.

[3] The Court previously granted Defendants' request to judicially notice the at-issue Shasta County Ordinances, No. SCC 2011-05 (2011) and No. SCC 2014-02 (2014) (ECF No. 9 at 4–14, 16–28) and herein incorporates those documents as referenced by the instant motion. (*See* ECF No. 27 at 3 n.3 (citing Fed. R. Evid. 201(b)(2); *Chew v. City & Cnty. of San Francisco*, No. 13-CV-05286-MEJ, 2016 WL 631924, at *1 (N.D. Cal. Feb. 17, 2016), *aff'd*, 714 F. App'x 687 (9th

14.) Prior to the 2011 Ordinance, the County had no regulations specifically addressing the cultivation of medical marijuana in Shasta County. (*Id*. at 4.)

The County's intent in creating the 2011 Ordinance was to regulate medical marijuana cultivation (as permitted under the CUA and MMP) and "to accommodate the needs of Qualified Patients and their Primary Caregivers" while mitigating potential adverse effects on surrounding areas and persons. (ECF No. 9 at 5–6.) To that end, the 2011 Ordinance incorporated definitions set forth under several code sections, including the CUA and MMP, and restricted marijuana cultivation to the legal residences of qualified patients and/or their primary caregivers.[4] (ECF No. 9 at 8–9.) With respect to permitted cultivation sites, the Ordinance further set forth regulations pertaining to the location and size of the cultivation site; type of property on which cultivation was permitted; fencing and other structural and security requirements; and prohibitions of cultivation sites located near certain premises (such as schools, public parks, child care centers, churches, the property lines of neighboring private residences, and areas where the cultivation would be visible to the public). (*Id.* at 9–12.) The 2011 Ordinance additionally cautioned that it was "not [to] be construed to protect Qualified Patients, Primary Caregivers or any other person from prosecution pursuant to any laws that may prohibit the Cultivation, sale, distribution, possession and/or use of controlled substances, or to authorize conduct that is unlawful under state or federal law," and expressly noted the cultivation, sale, possession, distribution, and use of marijuana remained unlawful under federal law. (*Id.* at 12.) Finally, the 2011 Ordinance

---

Cir. 2017); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006)).)

[4] Definitions incorporated by the 2011 Ordinance include "Cultivation," "Enforcing Officer," "Fence," "Indoors," "Legal Parcel," "Marijuana," "Medical Marijuana," "Medical Marijuana Collective," "Outdoors," "Premises," "Primary Caregiver," and "Qualified Patient." (*See* ECF No. 9 at 8–9.) As relevant here, a "Qualified Patient" is a person who has applied for and received a valid identification card for medical marijuana use, a person with a valid prescription in place, or a caretaker or guardian of someone with a serious medical condition who was prescribed medical marijuana. *See* Cal. Health & Safety Code § 11362.7. A "Primary Caregiver" is an individual designated by a qualified patient, who is responsible for the housing, health, or safety of that patient (such as a designated health care facility or family member). *Id.* An "Identification Card" is issued by the State Department of Public Health pursuant to the recommendation of a licensed physician. *Id.*

provided that any marijuana cultivation not in conformance with the Ordinance's provisions would be declared a public nuisance and abated "by any means available by law to prevent public nuisances." (*Id*. at 9.)

"[I]n reliance on the existence of the 2011 Ordinance," James Benno purportedly relocated in early 2013 to a property on Hopekay Lane in unincorporated Shasta County to establish an outdoor marijuana cultivation. (ECF No. 29-1 at 5, 10.) Plaintiffs allege Benno "expended significant money, time and labor" leasing property and preparing the site for outdoor cultivation, "including, but not limited to: i) clearing all debris from the rented property[;] ii) purchasing materials and constructing a 6 foot wood fence (100 x 150 ft) and affixing a 2 x 8 fiberglass barrier atop; iii) purchasing materials and constructing 4 x 4 wood pallets; iv) purchasing and preparing planting pots; [and] v) relocating 100 yards of soil [Benno] prepared for growing the medical marijuana plants." (*Id.* at 10.)

Plaintiffs identify two raids executed in Shasta County after enactment of the 2011 Ordinance which they allege were performed without valid warrants:

1) In or around September 2013, unidentified employees of the Shasta County Sheriff's Department ("Sheriff's Department") and Code Enforcement ordered the removal of approximately 68 medical marijuana plants from the Shasta County property on which Jessica Solano and Nicholas Bolton were cultivating medical cannabis. (*Id.* at 3, 6.)
2) In or around September 2013, unidentified employees of the Sheriff's Department and Code Enforcement raided the Shasta County property on which Walter and Jerilyn Carney were cultivating medical cannabis and destroyed approximately 96 medical marijuana plants and unspecified personal property. Walter and Jerilyn Carney were arrested by unidentified employees and held in jail for three days. (*Id.*)

C. <u>2014 Ordinance</u>

On January 28, 2014, finding the provisions of the 2011 Ordinance to be "inadequate to control the negative impacts of marijuana cultivation" and noting additional risks and adverse impacts associated with marijuana cultivation, the County enacted a subsequent ordinance amending the entirety of the 2011 Ordinance and the County Code section pertaining to

"accessory buildings and uses," as well as portions of the County Code section regarding "special uses" governing properties in Shasta County ("2014 Ordinance").[5] (ECF No. 9 at 16–28.) Importantly, the 2014 Ordinance banned all outdoor marijuana cultivation and explicitly limited cultivation to areas "within a detached residential accessory structure affixed to the real property (a) that meets the definition of "Indoor," or "Greenhouse," (b) that is located on the same Premises as the Residence of a Qualified Patient(s) or Primary Caregiver(s), and (c) that complies with all of the provisions of the Shasta County Code relating to accessory structures . . . ." (*Id.* at 22.) As to indoor cultivation, the Ordinance set forth specific requirements regarding the location of cultivation, screening and security structures, maximum permissible power output, water sources, filtration and ventilation systems, and the number of marijuana plants pertaining to permissible indoor cultivation. (*Id.* at 22–27.) Specifically, the 2014 Ordinance limited cultivation to no more than 12 marijuana plants on any premises, "regardless of the number of Qualified Patients or Primary Caregivers residing at the Premises or participating directly or indirectly in the Cultivation." (*Id.* at 23–24.) Finally, the 2014 Ordinance included a misdemeanor penalty clause which provided that any person in violation of the Ordinance was guilty of a misdemeanor. (*Id.* at 25.)

After enactment of the 2014 Ordinance, Plaintiffs identify two additional raids executed in Shasta County which were allegedly performed without valid warrants:

1) On May 20, 2014, unidentified employees of the Sheriff's Department and Code Enforcement raided James Benno's property. During the raid, approximately 99 medical marijuana plants were seized/destroyed, approximately 100 yards of soil was removed, and unspecified personal property was damaged and destroyed. Unidentified employees arrested James Benno, Logan Benno, and Jacob Benno. James and Logan Benno were held in jail for approximately 60 days and Jacob Benno was held for approximately 45 days. (ECF No. 29-1 at 5, 7, 9.) Plaintiffs contend

---

[5] The Ordinance also incorporated additional definitions from sections of the Shasta County and California Health and Safety Code such as "Greenhouse," "Marijuana Plant," and "Residential Accessory Building." (*See* ECF No. 9 at 19–22.)

James Benno was specifically targeted for a raid on his property "as a result of his medical marijuana advocacy and message." (*Id.* at 7.)

2) On or around May 1, 2016, unidentified deputies from the Sheriff's Department entered the property of Josh Hancock without a warrant, but the FAC does not indicate any further details. (*Id.* at 6.)

D. Policy-Related Allegations

With respect to the raid on James Benno's property, Plaintiffs contend unspecified employees of the Sheriff's Department "intentionally omitted facts [from the warrant affidavit] that would indicate" the marijuana cultivation site was "in conformance with state and local law." (*Id.* at 7, 18.) No particular facts or circumstances are identified. Plaintiffs further maintain that during the Benno raid, the Sheriff's Department "failed and refused to make a genuine and fair effort to determine" if the cultivation site was in conformance with state and local law. (*Id.* at 7–8.) More specifically, Benno alleges the County employees failed or refused to consider his medical marijuana patient written recommendations; contact any of the patients; test the marijuana for THC, CBD or other cannabinoids to confirm its medicinal purposes, or otherwise permit Benno to show his property constituted a "medical marijuana cultivation site"; research the water or power usage of the property; inform Benno what code sections the site was in violation of; or permit Benno an opportunity to cure them. (*Id.* at 8.) Plaintiffs broadly assert the Sheriff's Department acted the same way with respect to "the raids on other Plaintiffs," such that the purported actions constitute a standard operating procedure of the County, which began after the 1996 enactment of the CUA and has since resulted in over 100 improper raids. (*Id.* at 7–8.)

Finally, Plaintiffs contend "behaviors constituting excessive force" occurred. (*See id.* at 9.) Without identifying any particular Plaintiff or raid, the FAC generally asserts that in all of the raids, officers "dressed in military-style uniforms[,] some of whom had automatic machine gun type weapons," physically attacked and pointed their weapons at unspecified Plaintiffs. (*Id.* at 19.) Plaintiffs allege they were unarmed, "did not pose any danger to [the] officers," and did not "attempt[] to escape or evade [the] officers." (*Id.*) Rather, Plaintiffs allege they all "responded to [the officers'] requests." (*Id.*) As a result of these encounters, Plaintiffs purportedly sustained

"physical and mental injuries to limbs and other body parts as well as mental injuries including Post Traumatic Stress Disorder, anxiety and other mental disorders." (*Id.* at 19–20.) It is unclear from the FAC which Plaintiff purportedly suffered what injury, or as a result of which alleged conduct. As with the search and seizure allegations, Plaintiffs maintain the purported excessive force behavior was part of a "longstanding practice or custom" of the County since the CUA was enacted. (*Id.*)

E. Procedural Posture

Plaintiffs initiated this action on May 20, 2016. (ECF No. 1.) The operative FAC asserts three causes of action under 42 U.S.C. § 1983 ("§ 1983") by all Plaintiffs against all Defendants for: (1) warrantless search and seizure in violation of the Fourth Amendment; (2) excessive force in violation of the Fourth Amendment; and (3) due process violation under the Fourteenth Amendment.[6] (ECF No. 29-1 at 17–22.)

On January 20, 2021, the County filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 32.) On February 18, 2021, Plaintiffs filed an opposition and on February 25, 2021, the County replied. (ECF Nos. 34, 35.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

---

[6] The Court refers to Plaintiffs' operative complaint as the "FAC," as referenced by the parties, but notes Plaintiffs initially filed a First Amended Complaint on August 29, 2016 (ECF No. 6), which was stricken by the Court due to the disciplinary action taken against Plaintiffs' counsel resulting in his ineligibility to practice before this Court (*see* ECF No. 13).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, '[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or

///

her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) ("When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment."). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

## III. ANALYSIS

To the extent Plaintiffs' claims are asserted against the County (and the individual Defendants in their official capacities), Plaintiffs purport to assert *Monell* claims. (*See* ECF No. 29-1 at 17–22); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (suing a public employee in his official capacity under § 1983 is equivalent to suing the entity itself). The County moves to dismiss each of Plaintiffs' claims under Rule 12(b)(6) on the basis that Plaintiffs fail to adequately allege a County custom, practice, or policy that was the "moving force" of the purported constitutional violations, as required under *Monell*. (ECF No. 32.) The Court will address each of Plaintiffs' claims in turn.

A. Legal Standard for *Monell* Claim

A municipality may not be vicariously liable under § 1983 for an injury caused by its employee or agent. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). However, a municipal entity can be liable in a § 1983 case premised on either: (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or (4) where "an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Monell*, 436 U.S. at 691) (internal quotations omitted).

Where, as here, the plaintiff seeks to establish a *Monell* claim based on a longstanding practice or custom, he must prove that: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a longstanding practice or custom which amounted to a policy; (3) this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

"The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*; *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). Deliberate indifference exists when a municipality "fail[s] to investigate and discipline employees in the face of widespread constitutional violations." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011). Thus, to establish deliberate indifference, the plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Finally, a *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

> To survive a motion to dismiss, a plaintiff must do more than allege that a *Monell* defendant "maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint . . . Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e. excessive force) is insufficient.

*Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (internal citation omitted).

B. Violation of the Fourth Amendment — Search and Seizure (Claim One)

The County moves to dismiss Plaintiffs' first claim for failure to allege the existence of a County policy or custom or to show that the purported policy was the "moving force" behind the alleged constitutional violations. (ECF No. 32 at 16–20.)

In opposition, Plaintiffs argue they sufficiently allege the "County had a longstanding practice or custom . . . [of] intentionally omitting information from affidavits [to obtain warrants] . . . that the subject marijuana cultivation sites were operating legally . . . [and] failing and refusing to make a genuine and fair effort to determine if . . . a medical marijuana cultivation site raided [was] in conformance with state and local law." (ECF No. 34 at 6–7 (citing ECF No. 29-1 ¶¶ 41–55).) Plaintiffs further contend this "longstanding practice or custom" began with the "1996 voter approved [CUA]" and continued until at least the dates of the raids on Plaintiffs, alleging "more than 100 raids [occurred] during this time" pursuant to the alleged custom. (*Id.* at 7–8.) The Court, however, is unpersuaded by Plaintiffs' arguments.

As in Plaintiffs' prior Complaint, the *Monell* allegations are largely conclusory. *Cain*, 2017 WL 4410116, at *3. Moreover, Plaintiffs' claim that County employees intentionally omit information from warrant affidavits does not "give fair notice . . . to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez*, 666 F.3d at 637. Plaintiffs do not indicate what "facts" were customarily omitted from warrant applications which would indicate all 100 or more

properties that were raided were actually "in conformance with state and local law" (ECF No. 29-1 at 7) at the time of the raids. This is particularly problematic where Plaintiffs contend a singular policy has been in place since the 1996 passage of the CUA, even though Shasta County regulations governing marijuana cultivation drastically changed with the 2011 Ordinance and again with the 2014 Ordinance. Plaintiffs' contention that, while executing the warrants, the Sheriff's Department "failed and refused to make a genuine and fair effort to determine" if the cultivation site was in conformance with state and local law (*id.* at 7–8) similarly lacks a factual predicate and is therefore without merit. Moreover, Plaintiffs cite no legal authority in support of their underlying premise that, subsequent to the issuance of a warrant, officers are required to pause during execution of that warrant to essentially reexamine the validity of the bases for the warrant.

Nor have Plaintiffs alleged any facts showing a "sufficient duration, frequency and consistency" of conduct by the County to establish the existence of an official custom or policy. *Trevino*, 99 F.3d at 918; *McDade*, 223 F.3d at 1141. To the contrary, the FAC appears to focus solely on the details of the Benno raid, which is factually distinct from the other three raids identified in the FAC, two of which occurred prior to the enactment of the 2014 Ordinance. (*Compare* ECF No. 29-1 at 5 (post-2014 Ordinance raid of outdoor cultivation site resulting in removal of 99 plants and the Bennos' arrests) *with id.* at 6 (one post-2014 Ordinance warrantless raid with no details whatsoever, and two pre-2014 Ordinance raids of properties of unspecified cultivation site location: one resulting in destruction of plants and personal property, arrests, and nuisance abatement tax assessed against property owners; the other resulting in removal of plants but no arrests).) As such, the Court finds Plaintiffs have failed to allege the requisite facts regarding the specific nature of the alleged policy, custom, or practice. *Cain*, 2017 WL 4410116, at *3.

Furthermore, Plaintiffs fail to establish "the policy is the moving force behind the constitutional violation." *Dougherty*, 654 F.3d at 900. First, the FAC demonstrates the Benno raid was an "isolated or sporadic" incident in which James Benno was targeted by the County due to his zealous advocacy of medical marijuana patients' rights. (*See* ECF No. 29-1 at 7); *see also*

*Trevino*, 99 F.3d at 918. Thus, the moving force for the Benno raid was the purported animus towards Benno, not an established County custom or policy. Second, as discussed at greater length with respect to Plaintiffs' due process claim herein, Plaintiffs fail to sufficiently allege any constitutional deprivation because: (1) Plaintiffs have alleged facts showing the existence of probable cause where James Benno established an outdoor marijuana cultivation site (ECF No. 29-1 at 5, 10), in direct contravention of the 2014 Ordinance expressly prohibiting all outdoor marijuana cultivation and providing that any violation of the Ordinance constitutes a misdemeanor offense (ECF No. 9 at 22, 25); and (2) cultivating medical marijuana is not a constitutionally-protected right. For this reason as well, Claim One fails.

The Court discussed the pleading deficiencies of Plaintiffs' *Monell* claims at length in its Order dismissing the prior iteration of these claims. (*See* ECF No. 27 at 8–11.) Plaintiffs' submission of nearly identical allegations with the addition of only a few conclusory statements demonstrates an inability or unwillingness to cure the identified defects. As such, further leave to amend is unwarranted. *Ecological Rights Found.*, 713 F.3d at 520. Accordingly, the County's motion to dismiss Claim One as asserted against the County is GRANTED without leave to amend.

C. Violation of the Fourth Amendment — Excessive Force (Claim Two)

The County moves to dismiss Claim Two for the same reasons as Claim One. Namely, Plaintiffs fail to establish a County custom or policy, or that such policy was the "moving force" behind the purported constitutional violations. (ECF No. 32 at 16–20.) In opposition, Plaintiffs merely point to the allegation in the FAC that "upon raiding a marijuana cultivation site, the County Sheriff's Department would engage in excessive force" and contend their allegation that 100 such raids occurred after enactment of the 1996 CUA is sufficient. (ECF No. 34 at 7–8 (citing ECF No. 29-1 ¶ 51).) The County again has the better argument.

As with Claim One, Plaintiffs' allegations are impermissibly vague and conclusory. *AE ex rel. Hernandez*, 666 F.3d at 637; *Cain*, 2017 WL 4410116, at *3. It is unknown what amount of force, if any, was used during the Benno raid or the three other raids identified in the FAC. It is equally unclear what specific injuries resulted to each Plaintiff from each purported use of force

incident. It is therefore impossible to discern a policy or practice of any particular conduct occurring with any regularity during any form of marijuana raid. *Trevino*, 99 F.3d at 918; *McDade*, 223 F.3d at 1141. Nor have Plaintiffs alleged the requisite facts showing the County's awareness and lack of response to any purported uses of force. *Hunter*, 652 F.3d at 1234 n.8. Indeed, Plaintiffs' allegation that "upon raiding a marijuana cultivation site, the County Sheriff's Department would engage in excessive force" (ECF No. 29-1 ¶ 51) is purely conclusory. *See U.S. ex rel. Chunie*, 788 F.2d at 643 n.2; *AE ex rel. Hernandez*, 666 F.3d at 637. Finally, Plaintiffs' allegation that over 100 unspecified raids have been conducted since 1996 does not save this claim for the same reasons discussed above. Accordingly, Plaintiffs fail to state a *Monell* claim premised on a policy of excessive force.

As previously discussed, Plaintiffs were provided ample opportunity to cure the defects in their *Monell* claims but have failed to do so. *Ecological Rights Found.*, 713 F.3d at 520. The motion to dismiss Claim Two as asserted against the County is therefore GRANTED without leave to amend.

D. Violation of the Fourteenth Amendment — Substantive Due Process (Claim Three)[7]

Under the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To establish a substantive due process claim, a plaintiff must demonstrate a violation of an identified "liberty" or "property" interest protected by the due process clause. *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). "Laws that infringe a 'fundamental' right protected by the Due Process Clause are constitutional only if the infringement is narrowly tailored to serve a compelling state interest," while "[l]aws that do not infringe a fundamental right survive substantive-due-process scrutiny so long as they are rationally related to legitimate government interests." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal citations and quotations marks omitted).

---

[7] The FAC includes allegations that refer to both substantive and procedural due process. The caption of Claim Three in the FAC and the arguments in the parties' briefings, however, only refer to a substantive due process claim. The Court therefore construes Plaintiffs' Claim Three as asserting only a substantive due process claim and evaluates the claim accordingly.

To the extent Plaintiffs' due process claim is asserted as a *Monell* claim, the County seeks dismissal on the basis that Plaintiffs fail to adequately allege a cognizable liberty or property interest of which Plaintiffs were deprived, or that the County's allegedly wrongful conduct was not rationally related to a legitimate government interest.[8] (ECF No. 32 at 20–25.) Further, the County argues the due process claim must be dismissed as asserted by all Plaintiffs other than James Benno, as the FAC only includes allegations that Benno took actions in reliance of his purported right to cultivate marijuana under the 2011 Ordinance. (*Id.* at 23.) In opposition, Plaintiffs refer to paragraphs 52–55 and 114–117 of the FAC and argue the allegations contained therein sufficiently establish they had a "fundamental right to outdoor medical marijuana cultivation in Shasta County vested in equity and based on principles of detrimental reliance on the 2011 Ordinance," of which the County deprived Plaintiffs without due process when it enacted the 2014 Ordinance. (ECF No. 34 at 8–9.)

As an initial matter, the Court notes Plaintiffs do not address the County's argument that no allegations are asserted on behalf of any Plaintiff other than James Benno and therefore concede this point. (*See generally id.*); *see also Tatum v. Schwartz*, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) ("[Plaintiff] tacitly concedes this claim by failing to address defendants' argument in her opposition."). Accordingly, Plaintiffs Jacob Benno, Logan Benno, Marcia Jones and Richard Young's due process claim against the County is DISMISSED without leave to amend. The Court next addresses each remaining argument as to the due process claim asserted by James Benno.

*i. Fundamental Right/Vested Interest*

Plaintiffs' opposition clarifies that Benno's substantive due process claim is premised on the contention that Benno has a fundamental right to outdoor medical marijuana cultivation. (ECF No. 34 at 8.) However, Plaintiffs do not cite to any case law in support of this contention.[9]

---

[8] The County does not dispute the 2014 Ordinance constitutes a County policy and this first element of Plaintiffs' *Monell* claim is sufficiently established. *See Monell*, 436 U.S. at 690.

[9] Indeed, the Court is astonished that Plaintiffs rely upon no legal authority whatsoever to support any of the varied arguments advanced in opposition to the County's motion to dismiss the due process claim.

Moreover, as the Court noted in its prior order, there is no fundamental right to collectively cultivate marijuana — medicinal or otherwise. (ECF No. 27 at 13); *Kirby v. Cnty. of Fresno*, 242 Cal. App. 4th 940, 964 (2015) ("there is no [state] constitutional right to cultivate marijuana"); *see also Little v. Gore*, 148 F. Supp. 3d 936, 955 (S.D. Cal. 2015) ("California district courts have found there is no protected property interest [in medical marijuana] for purposes of the Fourteenth Amendment.") (citations omitted); *Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) ("[F]ederal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering."). To the contrary, "federal law prohibits the possession, distribution and manufacture of marijuana, finding it to be a drug with no currently accepted medical use in treatment in the United States . . . and there is no medical necessity exception to prosecution and conviction under the federal act . . . ." *The Kind & Compassionate v. City of Long Beach*, 2 Cal. App. 5th 116, 120 (2016) (internal quotations and citations omitted).

Alternatively, Benno contends he has an interest in outdoor marijuana cultivation in Shasta County that "vested in equity and [is] based on principles of detrimental reliance on the 2011 Ordinance." (ECF No. 34 at 8–9.) This argument is unavailing for several reasons. First, a plain reading of the 2011 Ordinance contradicts Benno's contention. For example, the 2011 Ordinance does not create a property right in cultivating marijuana but rather declares that all cultivation of marijuana constitutes a public nuisance except where specific criteria are met by the property owner. (*See* ECF No. 9 at 9–12.) The 2011 Ordinance also includes a "Liability" provision, in which it expressly states it creates no additional protections to persons who cultivate marijuana in compliance with the ordinance from prosecution under state or federal law. (ECF No. 9 at 12–13.) It is also worth noting that the MMP — upon which Benno also relies — expressly provides that "[n]othing in [the MMP] shall prevent a city or other local governing body from adopting and enforcing . . . local ordinances that regulate the location, operation, or establishment of a medical cannabis cooperative or collective." Cal. Health & Safety Code § 11362.83; *see also Safe Life Caregivers v. City of L.A.*, 243 Cal. App. 4th 1029, 1048 (2016) (holding neither the CUA nor the MMP grants a statutory right to use and/or collectively cultivate

medical marijuana); *City of Riverside v. Inland Empire Patients Health & Wellness Ctr., Inc.*, 56 Cal. 4th 729, 762–63 (2013) (holding the CUA and MMP "remove state-level criminal and civil sanctions from specified medical marijuana activities, but they do not establish a comprehensive state system of legalized medical marijuana; or grant a 'right' of convenient access to marijuana for medicinal use; or override the zoning, licensing, and police powers of local jurisdictions; or mandate local accommodation of medical marijuana cooperatives, collectives, or dispensaries.") *The Kind & Compassionate*, 2 Cal. App. 5th at 120–21 (quoting *City of Riverside*, 56 Cal. 4th at 757) ("the CUA and the MMP do not expressly or impliedly preempt [a city's] zoning provisions declaring a medical marijuana dispensary . . . to be a prohibited use, and a public nuisance, anywhere within the city limits.").

Second, the Ninth Circuit has held there is "no federal Constitutional right to be free from changes in the land use laws." *Bowers v. Whitman*, 671 F.3d 905, 916 (9th Cir. 2012) (quoting *Lakeview Dev. Corp. v. City of S. Lake Tahoe* (*Lakeview*), 915 F.2d 1290, 1295 (9th Cir. 1990)). Rather, an "interest in a particular land use does not constitute a protected property interest, unless the interest has vested in equity based on principles of detrimental reliance." *Id.*; *see also Santa Barbara Patients' Collective Health Coop. v. City of Santa Barbara*, 911 F. Supp. 2d 884 (C.D. Cal. 2002) (plaintiff's right to operate its dispensary was "vested" for due process purposes where it had obtained a land use permit to build the dispensary and had expended significant resources in reliance on the permit prior to the county's enactment of an ordinance that effectively prohibited the dispensary's operation).

Benno argues he expended time and money to establish an outdoors cultivation site that complied with the restrictions included in the 2011 Ordinance and such constitutes detrimental reliance. (ECF No. 34 at 9.) But Benno references no legal authority in support of this overly generalized application of principles of "equity" and "detrimental reliance" to the land use context. In fact, controlling law does not support Benno's premise. Rather, the Ninth Circuit has held "the gravamen of a 'vested rights' claim is that the landowner has a right to a particular use of his land because he has relied to his detriment on a formal government promise (*in the form of a permit*) stating that he can develop that use." *Lakeview*, 915 F.2d at 1295, 1298 (emphasis

added) (finding land use right only vested where developer had received a sufficiently specific special use permit or building permit and timely completed construction). Indeed, in *Lakeview*, the Ninth Circuit flatly rejected the argument that a "statutory vested right" resulted from the developer's reliance on a former land use ordinance — an argument that closely parallels Benno's — stating "it is well established that a vested right claim cannot be based on a general zoning ordinance." *Id.* at 1299 n.12 (citation omitted). Benno does not allege he had any form of permit from Shasta County and therefore cannot establish a vested right.[10] Thus, Benno fails to establish the existence of a fundamental or vested right.

*ii. Legitimate Government Interest/Relation to Public Health, Safety, Morals, or General Welfare*

Because the 2014 Ordinance does not infringe on a fundamental right, it needs only be "rationally related to legitimate government interests." *Stormans, Inc.*, 794 F.3d at 1085 (citing *Glucksberg*, 521 U.S. at 728). Put another way, the Ninth Circuit has required a plaintiff asserting a due process challenge to a land use ordinance to establish the ordinance is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Teresi Invs. III v. City of Mt. View*, 609 F. App'x 928, 930 (9th Cir. 2015) (quoting *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). Furthermore, "[i]f it is 'at least fairly debatable' that the [ordinance] was rationally related to legitimate government interests," the ordinance must be upheld. *Id.* (citing *Christensen v. Yolo Cnty. Bd. of Sup'rs*, 995 F.2d 161, 165 (9th Cir. 1993)).

The Court previously indicated Plaintiffs' due process challenge of a land use ordinance required them to establish the 2014 Ordinance was arbitrary and unreasonable lacking any

10 The Court additionally notes that, even if it were possible to establish a vested right based on sheer reliance and no permit of any kind, Benno has not alleged facts showing he actually complied with the requirements of the 2011 Ordinance — he does not allege facts showing he qualifies under the Ordinance as either a Qualified Patient or Primary Caregiver, nor does he allege facts showing the outdoor cultivation site he built complied with each of the express provisions set forth in the 2011 Ordinance with respect to detached accessory parcels, size of cultivation area in relation to premises, setback measurements, proximity of property to public premises, fencing and security requirements, or grow light systems. (*See* ECF No. 9 at 9–12.)

relation to a compelling government interest. (ECF No. 27 at 13.) This argument is yet again absent from Plaintiffs' briefings. (*See generally* ECF No. 34.) Indeed, the County correctly notes the 2014 Ordinance identifies several legitimate public goals pertaining to "more effectively control[ling] the adverse impacts associated with marijuana cultivation," such as "disagreeable odors" and related "complaints of respiratory problems," "negative effects on the environment, unsanitary conditions, negative effects on physical, mental and community health, violation of building codes, increased risk of burglary and other property crimes, and acts of violence in connection with the commission of such crimes or the occupants' attempts to prevent such crimes." (ECF No. 32 at 24–25 (citing ECF No. 9 at 17–18).) Plaintiffs fail to address these arguments and therefore fail to demonstrate the identified purposes of the 2014 Ordinance are not rationally related to legitimate state interests. As such, Plaintiffs' substantive due process claim fails.

Accordingly, the motion to dismiss Claim Three as asserted against the County is GRANTED without leave to amend.

E. Remaining Individual Defendants

As noted at the outset of this Order, the individual Defendants — Thomas Bosenko, Dale Fletcher, Tom Barner, and Lester Baugh — were not served summons in May 2016 when Plaintiffs initiated this civil action and were not subsequently served at any time thereafter. Indeed, even despite the fact that both Defendants and the Court called Plaintiffs' attention to this deficiency in prior filings (*see* ECF No. 22 at 2 n.1; ECF No. 27 at 2 n.1; ECF No. 32 at 2), Plaintiffs have still failed to serve the individual Defendants, who consequently have never appeared in this action. Plaintiffs' failure to serve the individual Defendants within the past five years and blatant disregard of the requirement to do so, despite being alerted to the deficiency on multiple occasions, runs afoul of Rule 4(m).[11]

---

[11] Rule 4(m) provides, "If a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Accordingly, Plaintiffs are hereby ordered to show cause, as directed herein, as to why Defendants Thomas Bosenko, Dale Fletcher, Tom Barner, and Lester Baugh should not be dismissed for failure to timely serve summons in compliance with Rule 4(m).

## IV. CONCLUSION

For the foregoing reasons, the County's Motion to Dismiss (ECF No. 32) is hereby GRANTED as to all claims asserted against the County[12] without leave to amend. Defendant Shasta County is DISMISSED from this action.

Plaintiffs are hereby ORDERED TO SHOW CAUSE as to why the remaining individual Defendants Thomas Bosenko, Dale Fletcher, Tom Barner, and Lester Baugh should not be dismissed pursuant to Federal Rule of Procedure 4(m). Plaintiffs shall file their response to this Order to Show Cause not later than 14 days after the date of electronic filing date of the instant Order. Failure to timely file a response will result in dismissal of the aforementioned individual Defendants from this action.

IT IS SO ORDERED.

Dated: August 31, 2021

Troy L. Nunley
United States District Judge

[12] This includes all § 1983 claims brought against the individual Defendants in their official capacities, which the Court has found to be equivalent to suing the entity itself. *Kentucky*, 473 U.S. at 165–66.